*In re* FÉLIX NEVÁREZ ZAVALA, querellado.

*Número:* O-84-810 *Resuelto:* 23 de marzo de 1989

512

*Rafael Ortiz Carrión*, Procurador General, *Américo Serra*, Procurador General Interino, *Norma Cotti Cruz*, Subprocuradora General, *Rosa Negrón de Quiñones* y *Eliadís Orsini Zayas*, Procuradoras Generales Auxiliares, abogados de El Pueblo; *Félix Nevárez Zavala, pro se; Alcides Oquendo*, abogado del querellado; *Fausto Ramos Quirós*, Comisionado Especial.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

 Afirma C. De La Vega Benayas, en su obra *Moral, Estilo y Función Judicial* —Cap. VI "Del Juez y la Sociedad"— 5 Rev. Der. Judicial 145 y ss., que el "juez no sólo está inserto en el mundo más estricto de su función, sino en otro más amplio: *el de la sociedad, en general.* Dentro de ésta, el Juez, con cualquier otro, si bien distinto en su función, *cumple y representa un papel. Para los otros, para los demás, él es el Juez; dentro y fuera del juzgado es el Juez.* El carácter que imprime la función no le abandona —salvo en la gran ciudad— ya nunca, excepto —y no totalmente— en el círculo estrecho de las amistades que pueda tener y conservar sin merma de su independencia, cosa díficil, pero posible". (Énfasis suplido.) Citado por L. Martínez-Calcerrada, *Interpretación del Poder Judicial*, Madrid, Ed. Rev. Derecho Judicial, 1970, pág. 75. No puede ser de otro modo. A fin de cuentas, "[u]n juez no mide su moral por la seriedad física de su gesto, por su empaque o por el aislamiento de la vida social. *La mide por la rectitud de su conducta, que puede permitirle la convivencia con los ciudadanos sin que nadie sospeche de su presencia o de su ausencia*". (Énfasis suplido.) L.M. Boffi Boggero, *La función judicial y la abogacía*, 115 Rev. Jur. Arg. La Ley 1097, 1103 (1964).

## I

Félix Nevárez Zavala fue nombrado y tomó posesión del cargo de Juez Municipal el 11 de mayo de 1983. El 25 de mayo fue asignado Juez regular en el Municipio de Naguabo, donde se desempeñó hasta el 31 de agosto del mismo año, fecha en que fue asignado al Municipio de Vieques.

Posteriormente, el 14 de mayo de 1984, recibió del Primer Ejecutivo nombramiento de receso como Juez del Tribunal de Distrito. Juró y tomó posesión el 22 de mayo.

En el descargo de sus funciones, Nevárez Zavala prestó servicios en Vieques desde el 1ro de septiembre de 1983 hasta el 27 de junio de 1984, esto es, diez (10) meses. Los

primeros nueve (9) meses como Juez Municipal y el último como Juez de Distrito.

El 18 de octubre de 1984, en vista de un informe investigativo del Director Administrativo de los Tribunales, el entonces Juez Asociado de este Tribunal, Hiram Torres Rigual, determinó la existencia de causa contra Nevárez Zavala y, en consideración a la gravedad de los hechos imputados, lo suspendió de empleo y sueldo.

Ese mismo día el Tribunal ordenó al Procurador General formular querella en su contra. La misma fue presentada el 26 de noviembre de 1984. Oportunamente Nevárez Zavala contestó y negó los hechos esenciales. Designamos Comisionado Especial al Lcdo. Fausto Ramos Quirós. Previo varios trámites, el caso quedó sometido con la prueba presentada por el Procurador General. El querellado Nevárez Zavala no produjo ninguna.

El 19 de diciembre de 1988 el Comisionado Especial rindió su informe. Notificadas las partes, el Procurador General compareció para exponer que no tenía objeciones y reiterar su solicitud de destituir. El querellado Nevárez Zavala no compareció. El informe del Comisionado Especial relaciona separadamente cada cargo y, a renglón seguido, expone los hechos probados.(1) A base de esa metodología, formuló las determinaciones siguientes:

---

(1) Nuestra decisión está predicada en los cargos incontrovertidamente probados. Así, hemos prescindido de considerar los cargos *segundo, cuarto, sexto, séptimo, octavo* y *noveno*, debido a que no fueron probados, y uno fue desistido por el Procurador General.

Reproducimos estos cargos.

"*SEGUNDO CARGO*: La prueba ofrecida relacionada con el cargo #2 imputado al querellado se limitó a indicar que allá para el mes de marzo o abril de 1984 estando la testigo, Sra. Helga Monell de Campos con su esposo en el Bar 'El Toro Sediento' en el Hotel La Esperanza de Vieques, Puerto Rico, tuvo [é]sta oportunidad de conversar con el Juez Nevárez quien se encontraba o llegó a dicho bar y dicho querellado le informó a la testigo que en la noche del apagón (noche en que se fue la luz en el pueblo, incluyendo el bar y Hotel La Esperanza), 'Peinilla' le había pateado su carro. La testigo preguntó al Juez que cómo era posible que él supiera que fue 'Peinilla' el autor de la patada a su carro, si esa noche estaba a oscuras, a lo que el Juez le ripostó 'si, yo sé que fue "Peinilla" yo eso lo tengo

*PRIMER CARGO*: La prueba sobre el primer cargo señala que el día 1ro. de abril de 1984 entre la 1:00 A.M. a 1:30 A.M., el querellado se personó a la barra "El Toro Sediento" del Hotel

---

seguro, esto no se va a quedar así.' Y continúa, 'Además esa misma noche del apagón él había entrado al baño (refiriéndose a "Peinilla") del Bar El Toro Sediento' y que allí él había encontrado que luego de 'Peinilla' salir del baño él (el Juez) encontró una jeringuilla y que esa jeringuilla él suponía y estaba seguro que era de 'Peinilla'. La testigo rechazó dicha imputación defendiendo al tal apodado 'Peinilla' quien se refiere al señor Luis Leguillou Parrilla, que es esposo de la prima de dicha testigo y la testigo le dice al querellado que si tenía el poder y la prueba que siguiera el caso, pero que el Juez le contestó 'No, yo no voy a estar conforme para meterle un año ni dos, yo quiero 99 años dentro.' El Juez insistió en que él tenía la jeringuilla para su ex[a]men dando a entender que iba a hacer una investigación sobre el particular. La testigo, sin embargo, no sabe si se tomó acción contra el señor 'Leguillou' por la posesión de dicha jeringuilla y/o que se tomara acción de naturaleza alguna por dicho hecho. Ninguna otra prueba fue ofrecida para sustanciar el señalamiento a nuestro juicio de conducta ilegal por parte del querellado Juez Nevárez Zavala. *Se trata de una legítima actuación sobre la posible omisión de acto delictivo, pero la cual puede informarse que fue conducida con carencia de tacto y de sana administración de justicia.*

"*CUARTO CARGO*: El cargo número 4 imputa al querellado haber incurrido en conducta ilegal e impropia consistente en utilizar la autoridad de su cargo y los recursos del Tribunal General de Justicia para realizar 'una investigación de rutina' sin que existiere caso o querella en la cual estuvieran envueltos o fueran parte los ciudadanos Luis Leguillou Parrilla y Richard Willmont. *No existe prueba en el record por razón de no haberse ofrecido, para probar el cargo como imputado*, surgiendo por el contrario, que la investigación si alguna, que se estaba llevando a cabo por el Tribunal dirigido por el querellado se trataba de una querella del propio testigo Richard Willmont que fue investigada y que para grabar su testimonio se le citó a la sala del Tribunal. Dicha investigación fue practicada igualmente por fiscal.

"La querella del señor Willmont fue eventualmente referida a la Policía Estatal y siguió su curso normal ante las autoridades.

"*SEXTO CARGO*: Se le imputa al Juez Nevárez Zavala en el Sexto Cargo que éste incurrió en conducta ilegal e impropia al gestionar, obviando a la Oficina del Juez Administrador de Fajardo la presencia en Vieques de otro Magistrado, Juez Colón Barbosa, para que entendiera en el procedimiento de causa probable contra el señor Miguel Adams Herrera, siendo el propio Juez Nevárez Zavala presuntamente el perjudicado en el caso.

"Se imputa, además, al querellado, que una vez el Juez Colón Barbosa se personó en Vieques a los fines antes requeridos el querellado le invita a un 'trago' y le previene de las circunstancias en que presuntamente ocurrieron los hechos que habían de estar ante la consideración de dicho magistrado.

"Sobre dicho extremo se presentó el testimonio del Juez Colón Barbosa, quien refiere y declara que para dicho d[í]a 21 de octubre de 1983 él estaba actuando como Juez Municipal en la región de Humacao asignado a Fajardo y Lu-

Duffy Highland House en la Isla de Vieques y allí, dirigiéndose *en forma agresiva e insistente profirió palabras insul-*

---

quillo. Que dicho día prestó servicios en el Municipio de Luquillo, así como en Vieques. Que estando en Luquillo, recibió una llamada del Juez Nevárez Zavala, quien le necesitaba porque tenía un caso que quería que yo, (o sea el Juez Colón Barbosa) atendiera. Indica el Juez Barbosa que él recibió la llamada del Juez Nevárez como a eso de las 9:00 A.M. de dicho día y que una vez terminó de hablar con el Juez Nevárez Zavala se comunicó con el Juez Gabriel García Rosario, Juez Administrador y le indicó sobre el pedido del Juez Nevárez Zavala. El Juez Administrador se molestó inquiriendo al Juez Barbosa que cómo estaba en su sala, la cual estaba llena, por lo que el Juez Administrador le indicó que él podría ir a Vieques una vez terminara con su sala y vaciara su calendario.

"Indica el testigo que él volv[i]ó a llamar al Juez Nevárez y le explicó que le era imposible ir en el curso de la mañana, pero que tan pronto terminara su trabajo podía ir a Vieques. La molestia del Juez García Rosario respondía a que el Juez Nevárez Zavala no había canalizado su comunicación a través de la Administración. Una vez terminó el Juez Barbosa en su sala en Luquillo se trasladó a eso de las 12:00 en un avión hacia Vieques. El Juez Nevárez le esperó en el Aeropuerto con el Teniente de la Policía de apellido Marrero.

"En el transcurso del aeropuertó hacia el Pueblo, indica el testigo qu[e e]l Juez Nevárez le explicó la razón por la cual no podía intervenir en el caso y le explicó sobre el caso que se le requería a dicho Juez que atendiera. El Juez Nevárez le indicó que el caso que le iba a someter era uno por alteración a la paz en la cual él era el perjudicado y que el acusado lo sería el señor Michael Adams. El Juez Nevárez le invitó a darse un trago a lo que el Juez Colón Barbosa se negó, pero que siempre el Juez Nevárez se di[o] un trago con el Lcdo. González Reyes, quien coincidió en el vuelo del Juez Barbosa a Vieques.

"Si bien el querellado solicitó directamente los servicios del Juez Colón Barbosa para que entendiera en el procedimiento de causa probable contra el señor Miguel Adams, acusado por el propio Juez Nev[á]rez de desacato, sin recurrir a los trámites administrativos, lo cierto es que el propio Juez Colón Barbosa informó de la Petición del Juez Nevárez al Juez Administrador del Distrito de Fajardo, quien autorizó al testigo, Juez Colón Barbosa, a trasladarse a Vieques una vez terminara sus trabajos en Luquillo el día 21 de octubre de 1983. Dicho traslado del Juez Barbosa a Vieques no afectó los trabajos del Tribunal de Distrito de Luquillo, permitiendo que se sometiera el caso contra el señor Adams ante un juez distinto al Juez perjudicado.

"El propio Juez Colón Barbosa indica que el querellado Juez Nevárez Zavala, s[í] le indicó y le previno de las circunstancias en que habían ocurrido presuntamente los hechos que habían de estar ante su consideración y así como la razón por la cual se encontraba detenido y preso el acusado en dicho caso antes de ventilarse el procedimiento de causa probable.

*"La declaración del propio Juez Barbosa no surge ni hay indicio que el querellado pretendiera en modo alguno influenciar indebidamente a éste.*

"Cabe señalar que habiéndose determinado causa probable contra el señor Adams el proceso se celebró ante otro Magistrado y medió una alegación de culpabilidad del señor Adams.

*tantes y vocabulario impropio* contra el Sr. Luis Leguillou Parrilla, residente y natural de Vieques, quien se encontraba

"*SÉPTIMO CARGO*: El cargo #7 fue *desistido* por la Oficina del Procurador General durante la vista celebrada el 6 de m[ay]o en horas de la mañana cuando el testigo y supuesto perjudicado por una actuación del Juez Nevárez irrumpió en un incontrolable estado de histeria de llantos lo que ocasionó [que] se excusara a éste por el Comisionado Especial y por los abogados de las partes. Se anunció que dicho testigo estaba bajo tratamiento [por] incapacidad mental y del corazón. *Accedimos al desistimiento del cargo por la parte querellante.*

"*OCTAVO CARGO*: En el cargo número 8 se le imputa al Juez F[é]lix Nevárez Zavala, haber incurrido en conducta ilegal e impropia consistente la misma en sugerirle al señor Buenaventura Torres Martínez hacerse testigo del pueblo en los casos de [*Pueblo vs. José L. Hernández y Enrique de Jesús*] por el delito de escalamiento agravado, 'porque si no lo hacía l[e] iba a meter $25,000.00 de fianza y lo iba a meter a la cárcel.'

"Para sostener dicho cargo se ofreció el testimonio de Don Buenaventura Torres Martínez, quien informa ser un residente del pueblo de Vieques por 23 años y conoció al Juez Nevárez Zavala desde que éste fue juez en Vieques. Que para el 22 de diciembre de 1983 él fue citado a la vista de un caso en Fajardo sobre robo de una ternera a un tal Román Cruz, caso en el cual éste Buenaventura Torres Martínez aparecía como testigo de cargo.

"Sobre dicho caso, el testigo había prestado una declaración jurada en Vieques y al mostrársele la misma reconoció su firma, la que informa haber prestado ante un Policía en el Cuartel de Vieques.

"Informa el testigo que estando solo en el Cuartel de Vieques, el Policía conocido por 'Tinsi' estando solo con él, le di[o] en la cara exigiéndole que se hiciera testigo del pueblo. El testigo insistió en que él no podía decir lo que se pretendía que él dijera ya que él no sabía nada de lo que ellos decían. *Que luego vino el Juez Nevárez Zavala y le dijo que si n'o se hacía testigo del pueblo lo metería preso.* El testigo declara haberse asustado, siendo ésta la primera vez que estaba en el cuartel, y acepta que entonces firmó la declaración imputándole la comisión del delito a un ciudadano en Vieques por robo de dos' vacas. Posteriormente, el testigo comparece ante el Tribunal de Distrito de Fajardo a la vista del caso y allí declara en las circunstancias que prestó su declaración jurada en Vieques declarando que lo que él había expuesto allí no era cierto, ya que él no conocía nada del referido incidente.

"Se ofreció además, el testimonio del Fiscal Miguel [Á]ngel Rivera, Fiscal de Distrito de Humacao, quien declaró que fue el Fiscal que intervino en la vista de causa probable en el caso en que estaba envuelto como testigo Don Buenaventura Torres Martínez. Que ese día el Lcdo. Pedro Baigés Chapel en representación del acusado, solicitó que se hiciera o se llevara dicho procedimiento en sala y con la grabación de los procedimientos, aduciendo como razón para ello que el testigo que tenía la Fiscalía (Don Buenaventura) para probar su caso era un c[oa]utor a quien se le había agredido, y se le había obligado a hacerse testigo del pueblo. Antes de entrar a la vista, el Fiscal Miguel [Á]ngel Rivera se entrevistó con el señor Buenaventura Torres quien le indicó que el Policía investigador de apodo 'Tinsi' le había dado en un pómulo, le había dado en las costillas, que lo había

allí acompañado del Sr. Richard López, encontrándose además presentes Doña Ada Díaz, Don Dionisio Pérez, el señor Simmons, el Representante, Hon. Samuel Cepeda y el Sr. Edwin Sherman.

La prueba *incontrovertida* señala que el querellado, F[é]lix Nevárez Zavala, Juez de Distrito de Vieques, al entrar al esta-

---

golpeado para que sirviera de testigo del caso. En ese instante intervino el Lcdo. Baigés indicándole al Fiscal que de eso tenía conocimiento el Hon. Juez Nevárez. Testificó, sin embargo, *el señor Buenaventura Torres que no, que el Juez había salido que no estaba presente cuando ocurrió la agresión, que fue durante la ausencia del Juez que el policía lo agredió.* El Fiscal Miguel [Á]ngel Rivera entonces le informó al Lcdo. Baig[é]s que él preferiría que hubiesen mil culpables en la calle que un inocente adentro y que por esa razón indicó que pediría el archivo del caso bajo la Regla 247(a). El Lcdo. Baigés[,] sin embargo, insistió en que él quería ver su caso. El caso se vi[o] ese día ante el Juez Bernardo Colón Barbosa y fueron grabados los procedimientos. Ese día mientras el Fiscal interrogaba al testigo del pueblo, Buenaventura Torres, el Administrador del Tribunal, Garc[í]a Rosario, se comunicó con el Juez F[é]lix Nevárez indicándole el Juez García Rosario al fiscal Miguel [Á]ngel Rivera que el Juez F[é]lix Nevárez quería que se le citara a él para ser testigo y que a través del Juez García Rosario estaba solicitando al Juez Nevárez que si se podía posponer la vista a los efectos de él estar presente. El Fiscal Miguel [Á]ngel Rivera no accedió a dicha solicitud, ya que ese día vi[o] efectivamente al testigo con unos moretones[,] además de unos retratos en manos del Lcdo. Baigés que allí fueron presentados, y que entonces tomando en consideración que siendo el testigo un c[oa]utor y único testigo de cargo, no valía la pena suspenderse la vista a los efectos de visualizar *si las imputaciones que se le hacían al Juez F[é]lix Nevárez eran ciertas o no, y se siguió con el procedimiento.*

"El Juez Colón Barbosa no encontró causa probable para radicar acusación a lo que el Juez F[é]lix Nevárez entonces le indicó al Fiscal que apelara la misma, porque ya eso era costumbre en Vieques que una vez que se prestaban declaraci[o]nes juradas se re[v]elaban aseverando que la Policía los había obligado.

*"NOVENO CARGO:* Se imputa en el cargo número 9 al Juez F[é]lix Nevárez Zavala haber incurrido en conducta ilegal e impropia al tomar declaraciones juradas por escrito a testigos en fechas posteriores a él haberlos examinado oralmente en procedimiento de causa probable en un caso de escalamiento en la Mueblería Nueva propiedad del señor Teófilo Bermúdez Garay, ocurrido el 4 de noviembre de 1983. Alegó que él las tomaba por instrucciones de la Fiscalía de Humacao. El Hon. Fiscal Miguel [Á]ngel Rivera negó que la versión del querellado fuera cierta y que, por el contrario, el Fiscal de Distrito había impartido [ó]rdenes en contrario.

"El testimonio ofrecido por el Fiscal Miguel A. Rivera, *no se desprende prueba directa relacionada con las imputaciones de este cargo ni se ofreció prueba adicional por testimonio otro alguno que nos permita hacer una conclusión de hecho sobre los extremos apuntados."* (Énfasis suplido.) Informe del Comisionado Especial, 19 de diciembre de 1988, págs. 4-13.

blecimiento —bar "El Toro Sediento" *di[o] un fuerte puño sobre la mesa en la barra y comenzó a expresar* entre otras cosas que el señor Leguillou (allí presente) era un "*cabroncito*" quien se pasaba escribiendo cartas al Senado de Puerto Rico y quien le tenía "enfogonao" que le iba a pegar cinco tiros en la cabeza por "hijo de puta".

El señor Leguillou optó por abandonar el sitio, montó [en] su vehículo y al parar frente al establecimiento requiriendo al señor Richard "Junior" López para que le acompañara, ya que llegaron allí juntos, *se acercó al querellado y volvió a proferir las mismas palabras señalándole* al Representante Cepeda, quien se encontraba en el establecimiento, que aquél (Leguillou) era "hijo de puta" que se pasaba escribiendo al Senado cartas sobre él.

Expresó el querellado en presencia del Representante Cepeda, "lo que sucede es como yo he acabado con la poca verg[ü]enza aquí en Vieques a ustedes los comunistas les ha molestado eso y me han hecho varios reportes y me alegro de que aquí haya un Legislador, para que se entere de cómo están sucediendo las co[sa]s aquí en Vieques[.]

El Representante Cepeda se levantó y le indicó al querellado que a los servidores públicos no les convenía ese tipo de discusión en público. El querellado entonces optó por retirarse.

El testimonio del Sr. Leguillou sobre el incidente en el bar fue en esencia corroborado por la declaración del testigo Richard López Díaz.

. . . . . . . .

*TERCER CARGO*: El tercer cargo imputa al querellado haber incurrido en conducta inmoral, ilegal e impropia consistente en *ingerir bebidas alcohólicas en horas laborables y antes de asumir funciones* judiciales como Juez del Tribunal de Distrito, Sala de Vieques.

Sobre este cargo hay tanto prueba directa como prueba que por inferencias permisibles *indican la costumbre o inclinación del querellado a ingerir bebidas alcohólicas bien durante horas del mediodía antes de asumir funciones judiciales como en horas de la alta noche y/o madrugada en sitios públicos.*

Del testimonio del Lcdo. Carlos L. González Reyes ofrecido por la parte querellante y en ocasión de que el Juez Zavala

estaba ejerciendo como Juez del Tribunal de Distrito de Vieques, Puerto Rico, el 21 de octubre de 1983 en horas del mediodía, a eso de las 12:00 meridiano se trasladó éste al Pueblo de Vieques desde Fajardo coincidiendo en ese Viaje con el Honorable Juez Bernardo Colón Barbosa. Al llegar al aeropuerto de Vieques el Honorable Juez Nevárez Zavala se encontraba en el aeropuerto y ofreció transportación tanto al Juez Colón Barbosa como a dicho testigo. En el trayecto del Aeropuerto a Vieques [e]stas tres personas entraron a un negocio que hay en la misma área, cerca de la misma área del aeropuerto a darse un trago. Esto en horas de entre las 12:00 y 1:00 de la tarde y desde allí se dirigieron a las oficinas del Lcdo. González donde el Juez Barbosa fue a saludar a la esposa de dicho testigo. Tanto el Juez Nevárez como el Juez Colón Barbosa salieron para un Café-Bar frente a las oficinas del Lcdo. González y allí fueron a darse un trago, ello durante las horas que podría haber sido de 1:15 a 1:30 del mediodía. Informa el testigo que en el aeropuerto pudieron haberse dado un máximo de dos tragos y en el próximo negocio frente a la oficina igual medida, de uno a dos tragos máximo.

Igualmente cabe señalar que el incidente causante de la formulación del primer cargo ya antes discutido ocurre en horas de la madrugada en el "Bar El Toro Sediento."

Se desprende además, de la Declaración Jurada admitida en evidencia por el testigo Miguel [Á]ngel Adams Herrera ([*Exhibit*] 10 del querellante) que el Hon. Juez Nevárez Zavala fue visto por dicho testigo la mayoría de las veces en el pueblo de Vieques en *las barras que frecuentaba el testigo, en barras públicas como también en barras privadas de hoteles*, tales como, Barra Boricua en el Hotel Bananas, y la Barra ["El Toro Sediento"].

. . . . . . . .

*QUINTO CARGO*: Sobre el cargo número 5 no pudo ofrecerse la prueba directa para sostener el mismo por las oficinas del Procurador General de Puerto Rico por razón de que el testigo y perjudicado, Sr. Miguel A. Adams, se encontraba y se encuentra reclu[i]do en una institución penal de los Estados Unidos y no empece las diligencias para traerlo ante la presencia de este Comisionado Especial, ello no fue posible. Por tal razón, y probadas todas las diligencias hechas por el

Alguacil Vázquez para citar al señor Miguel A. Adams Herrera, dicho cargo fue sometido por Declaración Jurada prestada por éste durante la investigación del caso ante el Fiscal Rivera por dicho señor Miguel A. Adams Herrera, y por el testimonio a los efectos del Juez Juan B. Colón Barbosa.

El cargo número cinco imputa al querellado que para el 20 de octubre de 1983, a eso de las 9:30 de la noche intervino en el "Bar Bananos" con el Sr. Miguel A. Adams a quien allí le citó para que compareciera el próximo día en horas de la mañana al tribunal. El señor Adams objetó la citación y así se lo manifestó al magistrado por entender que éste estaba borracho. El querellado le indicó que "lo iba a meter preso."

Se alega que el señor Adams se alejó del lugar y luego regresó en ánimo de disculparse, pero que el Juez Zavala se tornó agresivo, le apuntó con un rev[ó]lver, que él levantó las manos y luego "el juez se metió el revólver en la cintura" llamándole "plaga mala" "pícaro" y repitiendo que "le iba a meter preso."

De la declaración jurada prestada por el testigo, Sr. Adams ante el Lcdo. Federico Díaz Ortiz, Asesor Legal de la Administración de los Tribunales, el día 1ro. de agosto de 1984, se desprende que la *conducta observada por el querellado en el ambiente de un "Bar" en horas de la noche y en presencia del público no fue una propia de un magistrado*, surge si[n e]mbargo, de todo el incidente que el señor Adams actuó en forma impropia y agresiva por demás al increpar al querellado públicamente llamándole "vaquero borrachón, que era un charlatán", ello ante terceras personas.

Sobre este incidente el Sr. Adams fue denunciado por el Juez Nevárez Zavala, se encontró causa probable ante el Juez Colón Barbosa y luego en juicio asistido el Sr. Adams (acusado) por abogado, se declaró culpable de haber alterado la paz al haber pronunciado las palabras antes citadas, hecho admitido por el propio señor Adams en su declaración.

· · · · · · · ·

*D[É]CIMO CARGO*: En el cargo número 10 se imputa al Juez [Fé]lix Nevárez Zavala haber incurrido en conducta ilegal e impropia, consistente en que allá para el día 16 de abril de 1984 se personó frente a los portones del Campamento Garc[í]a en Vieques cuando un grupo alrededor de medio cen-

tenar de ciudadanos celebraba una demostración o "piquete" a favor de la paz en contra de la militarización frente a los portones de dicho campamento. Se personó el Juez Nevárez Zavala conduciendo un Jeep, lo estacionó y durante aproximadamente 45 minutos se dedicó a fotografiar a los manifestantes y las tablillas de algunos de sus vehículos que estaban estacionados allí y a su vez los anotaba. Que dicha conducta es una que viola los [C]ánones 1 y 13 de [É]tica Judicial.

Para sostener dicho cargo se admitió la Declaración Jurada prestada por el señor Rafael Mercado León ante el Lcdo. Federico Díaz Ortiz, Asesor Legal de la Oficina de Asuntos Legales de la Administración de los Tribunales, allá para el 2 de agosto de 1984. Dicha declaración fue admitida como [*Exhibit*] Y de la parte querellante, habiéndose a tales fines expuesto por el Sr. Alguacil las diligencias que hizo para la citación de dicho testigo, sin éxito alguno[,] por lo que se radicó un diligenciamiento negativo por encontrarse dicho testigo fuera de la jurisdicción de Puerto Rico.

Declaró dicho testigo que allá para el 16 de abril de 1984 mientras se encontraba frente a los portones del Campamento García en Vieques, Puerto Rico[,] participando en la celebración de un "piquete a favor de la paz y en contra de la militarización de nuestra tierra."

Que allí habí[a] un[a]s cuarenta y cinco a sesenta y cinco personas, en celebración de una actividad que había sido anunciada al público. Declaró el testigo que durante la celebración de dicha actividad tuvo oportunidad de ver allí al Hon. Juez Nevárez Zavala quien llegó allí en un Jeep Suzuki color azul, *sólo, que sacó una cámara de su vehículo y comenzó a fotografiar a los que asistían a la manifestación e inclusive, fotografiaba a los vehículos de los manifestantes. No sólo tomaba fotos a los vehículos sino que pudo observar el testigo que el Juez Nevárez se añangotaba como para fotografiar las placas de los vehículos estacionados, no a todos sino a uno que otro. Que éste tomaba fotos, regresaba a su Jeep, estaba un rato y volvía a producirse la misma operación. Que el Juez se veía un poco intranquilo, se veía un poco molesto, pero que la actitud que más l[e] extrañó fue la de toma de fotografías por el Juez.* Declaró igual el testigo que después del día 18 de abril a las 10:00 A.M. por razón de citación que

recibió para ir a la corte. La citación iba dirigida del Pueblo de Puerto Rico contra P/C Vieques Air Link, compañía en que trabajaba el testigo en calidad de aviador. Señalaba la misma como dato acerca del delito anunciado "Investigación de Querella"; Querellante, Jonás Vélez en representación de Fomento Recreativo. Dicha citación estaba firmada por Irma Colón, Secretaria del Tribunal de Distrito de Vieques y expedida el día 17 de abril de 1984, o sea, un día después de la celebración del acto ya antes relacionado. Ese día el testigo compareció al Tribunal conforme la citación y luego de una espera, pudo entrar a la oficina del Juez F[é]lix Nevárez donde se encontraba también Don Jonás Vélez así como un salvavidas del Balneario Público Bahía del Sol. Que en ese momento allí se le tomó juramento a él solamente y se entró en conversación no relacionada con el caso siendo el Juez Nevárez la persona que comenzó a hablar asuntos que no se relacionaban con la citación. El Juez expresó en tono de regaño: "Lo traigo aquí porque estoy harto de usted, ya le hemos permitido que desordene con su Jeep, con su motora, con su caballo por el pueblo." Afirmó el testigo que nunca en su vida había montado un caballo en el pueblo de Vieques. El testigo se mantuvo callado ante las expresiones del Juez quien siguió hablando y repitiendo lo antes dicho, haciendo además alusiones al piquete que se había celebrado el día anterior, el 16 de abril de 1986. Espec[í]ficamente diciendo: "Y no te creas que yo fui allí a tomarles fotografías a ustedes" y en un tono en voz alta, hasta se veía medio furioso y nervioso decía: "Yo fuí allí a tomarles fotografías a los policías de la base y a los policías estatales para que constara que allí toda la actividad era en paz", y yo por pimera vez pronunci[é] la palabra inquiriendo sobre las razones por lo cual fui citado, y él seguía en el mismo tema, en el mismo tema, o sea en el mismo tema de lo señalado." Se le dijo luego que hab[í]a estado caminando por donde no deb[í]a con su Jeep. Allí no se le preguntó nada a Don Jonás quien estaba presente, ni al policía. Preguntó el testigo cu[á]l era la querella de Don Jonás interrumpiendo el Juez Nevárez, expresando "por ahí es donde voy, no vamos a permitir que también en el Balneario Público Sun Bake, que es un sitio pacífico, etc. etc. Entonces pregunté al señor Jonás Vélez que qué conocimiento tenía de lo por m[í] hecho, y el

señor Jonás le responde al Juez que él no estaba allí, que no era testigo de nada, que él simplemente había sido informado por un salvavidas que yo andaba por el área de la arena en "Sun Bake". Entonces el Juez pregunta que quién sabía y el señor Jon[á]s Vélez señala al supuesto salvavidas. Que todo dicho procedimiento culminó en que el señor Nevárez expresó: "Est[á] bien, . . [.] este . .[ .], váyase, váyase." El testigo entonces le pide al Juez que si podía tener una cita con él a lo que el Juez le dijo que no tenía tiempo. (Énfasis suplido.) Informe del Comisionado Especial, 19 de diciembre de 1988, págs. 3–16.

## II

"Hay profesiones que no se compadecen con los 'términos medios', con las 'medias tintas' en su ejercicio; es tal la excelsitud de su ministerio, la delicadeza de su cometido, la trascendencia de su profesión, que ni la más leve nota de humana parcialidad puede empañar la fulgencia de su prestigio." F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1987, págs. 29–30. No siempre es así. A veces la fragilidad humana opaca ese prestigio, y nos vemos compelidos a intervenir disciplinariamente.

Tal es el caso de autos. Los hechos expuestos reflejan que, lamentablemente, el querellado Nevárez Zavala infringió importantes normas deontológicas judiciales. Incurrió en conducta lesiva a la integridad, independencia y respeto que debe caracterizar el proceder de todo magistrado dentro y fuera del estrado. Al hacerlo puso en entredicho la imagen de imparcialidad de la justicia en el Municipio de Vieques. Cánones XI y XII de Ética Judicial, 4 L.P.R.A. Ap. IV-A.

Reiteradamente observó en público un comportamiento que trascendió los límites de lo prudentemente per-

misible.(2) La vocación judicial requiere sacrificios y autolimitaciones. Ello implica "una convivencia social que, sin ignorar la acrisolada posición que se ostenta, facilite y permita la relacionabilidad con los demás órganos públicos en los actos señalados, y comporte para el interesado una reputación, prestigio y opinión populares, de ciudadano normal, *al que socialmente ni hay que temer, ni hay que huir, pero tampoco desconocer*". (Escolio omitido y énfasis suplido). Martínez-Calcerrada, *op. cit.*, pág. 75.

■ Su conducta repetitiva, es demostrativa de un patrón recurrente, impropio e incompatible con el cargo de juez. Cuando este proceder va acompañado, como en el caso de autos, de lenguaje impropio o conducta agresiva, beligerante y abusiva, la única vía decisoria es la destitución.

*Se dictará sentencia que decrete la destitución del querellado del cargo de Juez de Distrito.*

El Juez Asociado Señor Rebollo López no intervino.

---

(2) "No es necesario ni deseable que el Juez viva en el aislamiento. Sin embargo, ha de ser escrupuloso en evitar actuaciones que razonablemente puedan dar lugar a la impresión de que sus relaciones sociales, de negocios, de familia o de amistad influyen en alguna forma en sus determinaciones judiciales.

"Dentro del significado y espíritu de la norma anterior, y sin que la siguiente enumeración excluya otras actividades impropias, el Juez no debe:

"(c) Ingerir bebidas alcohólicas inmoderadamente en sitios públicos." Canon XXIV de Ética Judicial, 4 L.P.R.A. Ap. IV-A.