*In re* HON. ÁNGEL M. SANTIAGO DEL VALLE, querellado.

*Números:* PAD-93-06(A),    *Resueltos:* 28 de octubre de 1998
PAD-93-06(B)

*Carlos Lugo Fiol, Procurador General,* e *Iván Fuster Lebrón, Procurador General Auxiliar,* querellantes; *Eduardo Villanueva Muñoz* y *Gil A. Morales Rivera,* abogados del querellado; *Daniel E. López Pritchard,* Presidente de la Comisión Disciplinaria y de Separación del Servicio por Razón de Salud Jueces del Tribunal de Primera Instancia.

## RESOLUCIÓN

Considerado el documentado Informe de la *Comisión Disciplinaria y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia,* relativo a la conducta del entonces Juez de Distrito Ángel M. Santiago Del Valle, el Tribunal resuelve *censurar enérgicamente* al hoy abogado Santiago Del Valle y ordenar que esta resolución sea unida a su expediente personal en la Secretaría.

*Por su importancia, publíquese esta Resolución conjuntamente con dicho Informe.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— o —

## RESOLUCIÓN

San Juan, Puerto Rico, a 26 de octubre de 1994.

### *RELACIÓN DEL CASO*

El 5 de noviembre de 1993 el Procurador General de Puerto Rico radicó ante esta comisión dos querellas contra el Hon. Ángel M. Santiago del Valle, Juez del Tribunal de Distrito. En ambas querellas se imputa la violación de los Cánones I, IV, VIII y XXVI de Ética Judicial. La primera, identificada como la querella número PAD-93-06(A), se relaciona con hechos ocurridos el 11 de octubre de 1991; la segunda, identificada como querella número PAD–93–06 (B), con hechos ocurridos el 3 de julio de 1990.

En la querella PAD-93-06(A), donde se le imputa al Hon. Ángel M. Santiago Del Valle, Juez del Tribunal de Distrito, haber observado una conducta profesional impropia, se expresó lo siguiente:

#### CARGO I
El Honorable Juez Ángel M. Santiago del Valle incurrió en violación del Canon I del Código de Ética Judicial, el cual entre otras cosas dispone que el Juez en el ejercicio de su función de impartir justicia, consciente de la posición que ocupa en la sociedad y de la trascendencia de su misión, debe velar por que sus actuaciones respondan a normas de conductas que honren la integridad e independencia en su ministerio y estimulen el respeto y la confianza en la judicatura.

#### CARGO II
El Honorable Juez Ángel M. Santiago del Valle incurrió en violación al Canon IV del Código de Ética Judicial, que entre otras cosas dispone que el Juez debe velar porque su conducta se ajuste a los Cánones de Ética Judicial tanto en su proceder personal como en el desempeño de sus funciones judiciales.

## CARGO III

El Honorable Juez Ángel M. Santiago del Valle incurrió en violación al Canon VIII del Código de Ética Judicial, que entre otras cosas dispone que el juez debe evitar toda actividad que le reste dignidad a su posición como juez.

## CARGO IV

El Honorable Juez Ángel M. Santiago del Valle incurrió en violación al Canon XXVI del Código de Ética Judicial, que provee que los Cánones de Ética Judicial no excluyen otras normas de conducta que también obligan al Juez que estén establecidas por ley o que sean inherentes al honor tradicional de la judicatura.

De conformidad con el contenido de la querella, el Procurador General expresa que los hechos que dan base a los cargos antes mencionados son los siguientes:

El 11 de octubre de 1991, el Sr. Andrés Pérez Lugo viajaba en dirección a Guánica, Puerto Rico, en compañía de su esposa, Milka Ivette Rosado. Dicha pareja entraba al pueblo de Ponce, por el sector conocido como Los Caobos. El señor Pérez Lugo conducía su vehículo de motor y al llegar al semáforo de "Los Caobos" en Ponce, Puerto Rico, tomó el carril del centro, pasó la luz verde y siguió hacia adelante. En el carril derecho de la carretera en dicho sector un grupo de obreros trabajaba en el área, lo que impedía el paso de los vehículos por dicho carril. El Hon. Juez Ángel M. Santiago del Valle conducía su vehículo de motor, un Cadillac blanco, por el carril derecho en el sector Los Caobos. Como el Juez Santiago del Valle no podía proseguir en dicho carril, y al nadie cederle el paso, optó por invadir el carril izquierdo, cruzando al frente del Sr. Andrés Pérez Lugo, quien tuvo que frenar abruptamente. *El señor Pérez Lugo se acercó al vehículo del Juez Santiago del Valle, bajó el cristal izquierdo del suyo y le dijo al Juez*: "Tú eres un hijo de la gran puta; hace rato que vienes cañoneando", "si me chocas, me vas a tener que pagar el carro". El Juez Santiago del Valle se cruzó frente al vehículo del señor Pérez Lugo, tomó nuevamente el carril derecho y lo esperó. Luego, bajó el cristal de su vehículo y le dijo al señor Pérez Lugo, "¿Qué fue lo que tú me dijiste?. El señor Pérez Lugo le repitió al Juez Santiago del Valle lo que había dicho anteriormente y éste le dijo: "Ah, tú lo que eres es un cabrón, párate ahí que te voy a matar". El Juez Santiago del Valle detuvo su vehículo y le dijo al señor Pérez Lugo, "Ah, tú lo que eres es un cabrón por qué no te bajas, bájate de ahí que te voy a matar, bájate canto de cabrón". *Acto seguido el Juez San-*

*tiago del Valle desenfundó una pistola negra, con cachas negras
y vaqueta negra, apuntando con el arma hacia el vehículo del
señor Pérez Lugo.* El señor Pérez Lugo se sintió amenazado de
muerte. Ese día siguió al conductor del vehículo que lo había
amenazado hasta que se encontró con una guagua Trooper ro-
tulada de la Policía de Puerto Rico, conducida por el agente
Edwin A. Rosado Vega. El señor Pérez Lugo detuvo al agente
Rosado y le pidió que "siguiera al tipo del Cadillac", ya que le
había amenazado de muerte con un revólver; que por favor lo
siguiera que no sabían quién era. El agente detuvo al conductor
del Cadillac blanco; indicándole a su vez a los querellantes que
se estacionaran en el centro comercial que había en el área. El
agente le pidió a los querellantes que se mantuvieran en el
vehículo en lo que él hablaba con el conductor del Cadillac. El
señor Pérez Lugo hizo caso omiso y se bajó de su vehículo.

El agente Rosado le preguntó al conductor del Cadillac que si
tenía algún arma de fuego. El conductor de dicho vehículo le
contestó en la afirmativa, que tenía un arma de reglamento, y
que además era juez. El agente le pidió las credenciales al Juez
y éste se las mostró. Le enseñó también el arma. El agente
Rosado le preguntó al juez si era incapacitado y éste le dijo que
sí, que andaba en silla de ruedas. El agente Rosado le pidió a
las partes que fueran al Cuartel de Alta Vista, ya que era en ese
cuartel que tenían que preparar la querella porque los hechos
alegados habían ocurrido en ese sector. Una vez en dicho cuar-
tel, el agente Rosado se dirigió donde el guardián Jorge Georgi
Rivera, le explicó la situación y le pidió que, como el caso había
ocurrido en su jurisdicción, *"bregara con el asunto". El policía
Jorge Georgi Rivera entrevistó al querellante para preparar la
querella y comenzó la investigación.* Así se lo manifestó el Juez
Santiago del Valle. El policía Georgi Rivera ocupó el arma al
Juez Santiago del Valle. Dicha arma coincidió con la descrip-
ción dada por el querellante. El policía Rivera procedió a leerle
las advertencias al Juez Santiago del Valle, pero éste pidió que
las diera por leídas.

El caso fue sometido a la Fiscalía de Ponce, dándole conoci-
miento al Fiscal Edgar Delgado. Los querellantes presentaron
una denuncia el día 6 de enero de 1993 contra el Juez Santiago
del Valle por violación al Artículo 32(b) de la Ley de Armas. El
Juez Santiago del Valle presentó una denuncia contra el Sr.
Pérez Lugo el día 6 de enero de 1992 por violación al Artículo
153 del Código Penal de Puerto Rico ya que éste "... amenazó al
Juez Ángel M. Santiago del Valle indicándole: cabrón hace rato
que vienes cañoneándome, te voy a romper la cara, so hijo de la
gran puta, por lo que éste sintió temer por su vida o la de su
familia".

Los querellantes radicaron otra denuncia el día 6 de enero de 1992 contra el Juez Santiago del Valle bajo el Artículo 183 del Código Penal de Puerto Rico por éste "amenazarlos al decir lo siguiente: Cabrón párate allí que te voy a matar, a la vez que sacaba una pistola color negra y le apuntaba hacia su persona y repetía párate ahí que te voy a matar. Esto lo hacía mientras conducía su vehículo Cadillac del 1989. Los querellantes sintieron temor por su vida y la de su familia."

El caso fue sometido ante el Juez Vicente Santiago por el agente Jorge Georgi Rivera el día 7 de febrero de 1992. Las partes comparecieron por citación y le manifestaron al Juez que no interesaban seguir con el caso por lo que éste último procedió con el archivo del mismo. (Énfasis suplido.)

En la querella PAD-93-06(B) se imputa al Hon. Ángel M. Santiago Del Valle, conducta profesional impropia, por haber incurrido en violaciones de los Cánones I, IV, VIII y XXVI del Código de Ética Judicial. Su texto es idéntico al que se ha transcrito al relacionarse las imputaciones de la querella PAD-93-06(A).

De conformidad con el contenido de la querella PAD-93-06(B), los hechos que dan base a los cargos son los siguientes:

En horas de la mañana del 3 de julio de 1990, el Juez Santiago del Valle transitaba en su vehículo de motor por la carretera número 2 en dirección de Hormigueros hacia Mayagüez. Debido a la congestión de tránsito en dicha carretera, siguió su marcha por el paseo disponible para situaciones de emergencia. Ese mismo día el Sr. Julio Víctor Ramírez, reportero del diario local "El Vocero", se encontraba transitando en su automóvil por la misma carretera y se percató de la existencia de un automóvil "grande y blanco que discurría por el paseo contiguo a dicha carretera a una velocidad exagerada; provocando un levantamiento de polvo. El señor Ramírez Torres observó que el vehículo de referencia tenía la tablilla número 0377 con clasificación para impedidos. Ante tal situación, y ante el temor de que pusiera en riesgo la vida de peatones y conductores que en ese momento estuvieran por el lugar, procedió a anotar el número de tablilla de dicho vehículo. En ese momento, el semáforo cambió a luz roja y ambos vehículos se detuvieron a una distancia muy corta el uno del otro. El conductor del vehículo con la tablilla de impedido se percató de que el señor Ramírez Torres anotó su número de tablilla, por lo que invadió nueva-

mente el carril de paseo y se ubicó al lado del vehículo del señor Ramírez Torres. En ese momento el señor Ramírez Torres miró al conductor de dicho vehículo y se percató de que se trataba del Juez Ángel M. Santiago del Valle. El Juez Santiago del Valle en ese momento bajó el cristal izquierdo delantero de su automóvil y le dijo al señor Ramírez Torres ¡Qué carajo hace usted apuntando el número de mi tablilla!" El señor Ramírez Torres se identificó como periodista y el Juez Santiago del Valle le respondió, ¡A mi no me importa un carajo que usted sea periodista, so pendejo!" Luego de eso el Juez Santiago del Valle puso rápidamente su automóvil en marcha mientras continuaba gesticulando y murmurando para sí. Posterior a dicho incidente el señor Ramírez Torres acudió a la Oficina del entonces Fiscal Eugenio Alemañy Fernández, en la Fiscalía de Distrito de Mayagüez, y narró lo acontecido. El señor Ramírez Torres creyó prudente, antes de radicar alguna querella contra el Juez Santiago del Valle por alteración a la paz, remitir por escrito una comunicación al entonces Director Administrativo de los Tribunales, Hon. René Arrillaga Beléndez, relatando el referido incidente y expresando la ofensa y agravio que sintió por la actitud del Juez Santiago del Valle para con él.

Una vez radicadas las referidas querellas, se suscitaron varios incidentes, entre éstos, la solicitud de prórroga para contestar por razón de la condición de salud del querellado quien se encontraba hospitalizado en el Hospital de Veteranos. El querellado, representado por los licenciados Gil A. Morales Rivera y Eduardo Villanueva, finalmente presentó su Réplica el 3 de marzo de 1994. De la Réplica surge con meridiana claridad que el querellado implícitamente aceptó la relación de hechos imputada por el Procurador General en ambas querellas. En cuanto a la querella PAD-93-06(A), el querellado expresó lo siguiente:

El Honorable Juez Santiago del Valle, en su Declaración Jurada presentada ante el Fiscal Edgar Delgado García, *admite* que replicó las malas palabras del Sr. Pérez, *pero niega* que desenfundara su pistola y *alega que sólo se la mostró en la vaqueta y más aún, que no tenía balas en la recámara,* lo cual demuestra que su intención no era agredir o causar daño al Sr. Pérez. Es evidente por su Declaración Jurada (ver página 3 de la Declaración), que la intención era intimidar al Sr. Pérez para que éste supiera que no lo podía agredir con facilidad y que aún siendo impedido, podía defenderse .... (Énfasis suplido.)

En cuanto a la querella PAD-93-06(B), el querellado señaló lo siguiente:

> En el segundo caso, no hubo amenaza alguna sino expresiones que a veces se utilizan en la dinámica humana como un desahogo, que aunque no son comunes en un Juez, no son extrañas a los seres humanos que transitan por nuestras carreteras.
>
> En resumen, estos incidentes son las únicas querellas que se han formulado contra el Honorable Juez Santiago del Valle, quien ha ejercido con decoro, con competencia y con absoluta dedicación al servicio público en su carrera judicial durante quince años. Nos parece justo que se le conceda una oportunidad, con algo que tal vez no debe pasar de una amonestación, a fin de que el querellado culmine su función como Juez con una hoja de servicio limpia y honorable como él se ha esforzado en tener.

Con posterioridad a la presentación de la Réplica, el querellado nos envió copia de una comunicación dirigida al Gobernador de Puerto Rico, Hon. Pedro Rosselló, en la que presentaba su renuncia, efectiva el 1ro de julio de 1994, al cargo que ocupaba de Juez de Distrito del Tribunal de Primera Instancia. Luego, el 14 de abril de 1994, se radicó en autos copia de la comunicación suscrita el 5 de abril de 1994, por el Hon. Pedro Rosselló, Gobernador de Puerto Rico, en la que aceptaba la renuncia del querellado al cargo de Juez del Tribunal de Distrito, efectiva el 1ro de julio de 1994.

Finalmente, luego de señalarse la vista evidenciaria de este caso para el 22 de julio de 1994, los abogados del querellado y los abogados de la Oficina del Procurador General produjeron un "Informe sobre Conferencia Preliminar entre Abogados". En el mismo se incluyeron estipulaciones sobre los hechos, así como las controversias y las teorías de cada parte en el caso. Acordaron, además, someter el caso por el expediente, sin la necesidad de celebrar una vista evidenciaria en el caso, debido a la condición de salud del querellado. El 11 de julio de 1994, la Comisión emitió Resolución en la que requirió del querellado que antes de

cualquier determinación ulterior, éste debía renunciar por escrito a su derecho a vista y ratificar, también por escrito, su deseo de que el caso se resolviera por el expediente. El 20 de julio de 1994 se radicó una declaración jurada del Juez querellado, en la cual renuncia expresamente a su derecho a vista y autoriza a sus abogados a actuar en su nombre.

Esta Comisión ha examinado cuidadosamente el expediente y está en posición de resolver. Lo primero que debe determinarse es si a pesar de la renuncia del querellado, esta Comisión retiene su autoridad para continuar entendiendo en la querella presentada en este caso, en vista de lo dispuesto en la Regla 37 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico, las cuales entraron en vigor el 24 de noviembre de 1992. La Regla 37 dispone como sigue en la parte pertinente:

> Si la querella alega conducta constitutiva de delito, negligencia en el desempeño de sus funciones o violación a los Cánones de Etica Judicial o Profesional, la presentación por el juez de la renuncia al cargo no impedirá que continúe el procedimiento disciplinario en su contra si la naturaleza de la conducta imputada puede dar lugar a su desaforo o suspensión de la abogacía.

La citada regla articula una norma cuyos presupuestos fácticos son tres: Primero, que un juez querellado renuncie mientras se dilucida una querella en su contra ante esta Comisión; segundo, que la querella o querellas en su contra aleguen cierta conducta, *i.e.*, conducta delictiva, negligencia en el ejercicio de sus funciones o violación a los Cánones de Ética Judicial o Profesional; y tercero, que la naturaleza de la conducta imputada pueda dar lugar al desaforo o suspensión de la abogacía.

El primer presupuesto fáctico no parece presentar mayor dificultad. El Juez querellado sometió su renuncia al señor Gobernador, con copia al señor Presidente de esta

comisión. El segundo presupuesto tampoco genera dificultad. La conducta alegada en las querellas, de probarse en su día y *tomando como cierto lo alegado únicamente a los efectos de aplicar la Regla 37*, ciertamente configuraría delitos públicos tipificados en el Código Penal y la Ley de Armas. La querella, además, imputa violaciones a varios Cánones de Ética Judicial, que para efectos de la Regla 37 debemos tomar como si se hubiesen probado.

El tercero presupuesto de hechos puede generar cierta confusión. ¿Tiene esta Comisión autoridad para hacer recomendaciones sobre si la conducta alegada debe acarrear una sanción disciplinaria contra el querellado no como juez sino como abogado? Ciertamente no. Esta Comisión no tiene autoridad bajo la Regla 37 para hacer recomendación alguna en torno a si procede o no el desaforo o la suspensión de un querellado. Esta determinación corresponde a otro foro.

Sin embargo, por mandato de la norma dispuesta en la Regla 37, esta Comisión sí tiene que determinar si la conducta alegada, asumiendo que se hubiese probado, constituiría base de suficiente gravedad para desaforar permanentemente o suspender temporeramente del ejercicio profesional a un abogado quien se hubiese iniciado un procedimiento disciplinario.

En este caso se le ha imputado al querellado que en la vía pública desenfundó un arma de fuego y profirió palabras insultantes y ofensivas contra otras personas. Si en un procedimiento de desaforo se lograra probar que un abogado ha incurrido en esa misma conducta, éste podría ser suspendido del ejercicio de la profesión. Así surge de *In re: Padilla*, 87 DPR 236, 260–261 (1963), donde el Tribunal Supremo de Puerto Rico sentenció:

> Por razón y naturaleza de su profesión, el abogado viene obligado a conducirse en todo momento en forma tal que no menoscabe ni empañe la confianza que necesariamente se deposita en él, mediante la realización de actos tan extraños y ajenos al

ejercicio de su profesión como lo es el despliegue de un arma de fuego con ánimo de usarla durante la discusión de un asunto con un cliente. El abogado es un funcionario del Tribunal General de Justicia de Puerto Rico y como tal debe dar el ejemplo de buena ciudadanía, de cultura y de tacto, ya que viene obligado a considerar, defender y a hacer efectivos los derechos y obligaciones de otras personas. El ejercicio de su profesión es parte esencial de la función básica de impartir justicia en toda comunidad civilizada, de orden democrático, y bajo el imperio de la ley. Por lo tanto, el acto de tomar un revólver, apuntarle a sus cliente y bajo tal amenaza expulsarles de su oficina, como se especifica en el primer cargo, y se probó, constituye conducta impropia, reprensible, e inmoral, que se agrava en sumo grado cuando es ejercida por un abogado en sus relaciones con sus clientes a quienes les debe respeto y comprensión.

En dicha situación procedió una suspensión de un año del ejercicio profesional. Las diferencias fácticas entre el caso de *Padilla* y los hechos alegados en la querella no justificarían un resultado diferente. El hecho de que en lugar de haber ocurrido en la vía pública en vez de una oficina privada, y de tratarse de un juez y no meramente un abogado, sólo agravan la conducta imputada. Aunque concurrieron otras conductas serias que agravaron la situación en el caso de *Padilla*, y que ni siquiera se alegan en las querellas de este caso, no cabe duda de que el incidente del revólver y el lenguaje amenazante e irrespetuoso de por sí, una vez probado, resultaría en una suspensión del ejercicio profesional. En consecuencia, al configurarse los preceptos dispuestos en la Regla 37, esta Comisión concluye que retiene autoridad para continuar entendiendo en esta querella a pesar de la renuncia del Juez querellado.

Habiéndose concluido que la Comisión tiene autoridad para continuar los procedimientos y habiendo quedado la querella sometida por el expediente, considerando las alegaciones, los hechos admitidos por las partes, las estipulaciones y la prueba sometida que surge del expediente, luego de analizado el contenido del mismo y ponderada la prueba documental, se formulan las siguientes:

## *DETERMINACIONES DE HECHOS*

1. El 5 de noviembre de 1993 el Procurador General de Puerto Rico radicó ante esta comisión dos querellas contra el Hon. Ángel M. Santiago del Valle, Juez del Tribunal de Distrito. La primera querella radicada e identificada con el número PAD-93-06(A) se refiere a hechos ocurridos el 11 de octubre de 1991. La segunda querella radicada e identificada con el número PAD-93-06(B) se refiere a hechos ocurridos el 3 de julio de 1990. Para ambas fechas el querellado, Hon. Ángel M. Santiago del Valle, ocupaba el cargo del Juez del Tribunal de Distrito, para el cual fue designado en el año 1981. A partir de esa fecha ha ocupado el mismo hasta el 30 de junio de 1994, cuando se acogió a la jubilación.

2. En las dos querellas radicadas se imputa al querellado conducta profesional impropia utilizándose idénticas expresiones para imputar la violación a los cánones I, IV, VIII y XXVI.

3. En cuanto a la querella PAD-93-06(A), relativa a los hechos ocurridos el 11 de octubre de 1991, al radicarse la Réplica no se cuestionan los hechos expuestos por el Procurador General, a excepción del incidente de la pistola. Se expresa en la Réplica, a la página 3, lo siguiente: "El Hon. Juez Santiago del Valle, en su declaración jurada presentada ante el Fiscal Edgar Delgado García, admite que replicó las malas palabras del Sr. Pérez, pero niega que se desenfundara su pistola y alega que sólo la mostró en la vaqueta y aún más que no tenía balas en la recámara." Por ser irrelevante para la disposición final de esta querella determinar si el querellado desenfundó o no la pistola, esta comisión no hará determinación alguna sobre este particular y concluye que la relación de hechos presentada por el Procurador General es, en cuanto a los demás extremos, exacta y correcta.

4. Los hechos imputados en la querella PAD-93-06(B) ocurrieron el 3 de julio de 1990 tal y como los narra el Procurador General en la querella radicada. Al replicar a esta querella no se cuestionó la veracidad de la relación de hechos tal y como se expusieron por el Procurador General de Puerto Rico. Como se indica en la página 4 de la presente resolución, el querellado alegó, "que no hubo amenaza alguna sino expresiones que a veces se utilizan en la dinámica humana como un desahogo. Aunque no son comunes en un Juez, no son extrañas a los seres humanos que transitan por nuestras carreteras". Al aceptarse la relación de hechos alegados, se concluye que es una relación correcta de lo ocurrido. El querellado sólo ha tratado de mitigar su conducta en su Réplica.

A tenor con las determinaciones de hechos, se formulan las siguientes:

## CONCLUSIONES DE DERECHO

En las dos querellas de epígrafe se le imputa al Hon. Ángel M. Santiago del Valle, Juez del Tribunal de Distrito, el haber incurrido en violación de los Cánones I, IV, VIII y XXVI de los Cánones de Ética Judicial.

Se alega que el querellado incurrió en la violación de los referidos cánones el 11 de octubre de 1991, en cuanto a la querella PAD-93-06(A) y el 3 de julio de 1990, en cuanto a la querella identificada con el número PAD-93-06(B). En estas fechas el querellado ocupaba el cargo de Juez del Tribunal de Distrito para el cual fue designado en el año 1981. Ocupó este cargo hasta el 30 de junio de 1994, cuando se acogió a la jubilación.

Al ocurrir los hechos que se imputan, el Hon. Ángel M. Santiago del Valle estaba sujeto a los Cánones de Ética Judicial y por tanto, a la autoridad para disciplinar que tiene el Tribunal Supremo de Puerto Rico, en virtud del Artículo 5, Sec. 11 de la Constitución del Estado Libre Aso-

ciado de Puerto Rico. Igualmente estaba sujeto a las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico, en vigor al radicarse las querellas el 5 de noviembre de 1993.

El Canon IV expresa las normas que deben regir las relaciones y cooperación entre los jueces. Expone los parámetros entre los cuales deben mantenerse y la cooperación entre los jueces. Se expresa además la obligación del juez de promover los procedimientos disciplinarios que proceden contra cualquier juez o abogado que actúe impropia o deshonrosamente cuando así le conste personalmente.

El Canon VIII establece que no deben aceptarse posiciones, cargos o encomiendas que sean incompatibles con las responsabilidades judiciales. En este canon se establece la incompatibilidad del cargo de Juez con cualquier puesto en las ramas ejecutivas o legislativas u otro organismo del Estado, a parte de ocupar los cargos o participar en las actividades enumeradas en el mismo. (Ej. Presidente o funcionario del Colegio de Abogados de Puerto Rico).

El Canon XXVI establece que los cánones no excluyen otras normas de conducta que también obligan al Juez, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura.

De la relación de hechos expresados por el Procurador General, surge que las actuaciones imputadas no están relacionadas directamente con la labor del Juez querellado en relación con su cargo, sino con actuaciones de índole personal. Establecida esta premisa, no procede la querella bajo el Canon IV por no ocurrir los hechos entre miembros de la judicatura o en funciones judiciales. Igualmente ocurre con la alegación de violación al Canon VIII, el cual se refiere específicamente a ocupar posiciones, cargos o encomiendas incompatibles con el cargo de Juez. Sólo queda

por determinar si ha existido o no violación de los Cánones I y XXVI.

Podría pensarse que los Cánones de Ética Judicial se circunscriben a regular la conducta de los jueces dentro del limitado cauce de sus funciones oficiales y que no alcanzan a los actos que como ciudadanos particulares puedan realizar. Así parece entenderlo el querellado quien, en cierta manera, intenta minimizar la gravedad de su conducta por tratarse de incidentes ocurridos en la carretera y de expresiones y conductas que "a veces se utilizan en la dinámica humana como un desahogo ... [y] que no son extrañas a los seres humanos que transitan por nuestras carreteras." (Véase la línea 30, página 5 del Análisis de Derecho que contiene la Réplica). No tiene razón el querellado.

Los Cánones I y XXVI le imponen al Juez el deber de observar una conducta sosegada, moderada y ejemplificante en todas sus ejecutorias, tanto oficiales como personales. Son estos Cánones los que sirven de base para reconocer que el Juez no es un ente ajeno a la convivencia social, sino que está inserto en ésta y que como tal, debe ser en todo momento para el ciudadano común. Ya el Tribunal Supremo de Puerto Rico así lo estableció en *In re Nevárez Zavala*, 123 D.P.R. 511, 513 (1989), donde se le imputaba a un Juez, entre otras cosas, haber proferido palabras obscenas mientras se daba unos tragos en una barra. Sobre este particular, el Tribunal Supremo expresó lo siguiente:

> "[E]l juez no sólo está inserto en el mundo más estricto de su función, sino en otro más amplio: *el de la sociedad en general.* Dentro de ésta, el juez, como cualquier otro, si bien distinto en su función, *cumple y representa un papel. Para los otros, para los demás, él es el juez; dentro y fuera del juzgado es el juez.* El carácter que imprime la función no le abandona ... ya nunca, excepto —y no totalmente— en el círculo estrecho de las amistades que pueda tener y conservar sin merma de su indepen-

dencia, cosa difícil, pero posible ... (citas omitidas). No puede ser de otro modo. A fin de cuentas un juez no mide su moral por la seriedad física de su gesto, por su empaque, o por el aislamiento de la vida social. *La mide por la rectitud de su conducta, que puede permitirle la convivencia con los ciudadanos sin que nadie sospeche de su presencia o de su ausencia.* (Citas omitidas.) (Énfasis suplido y en el original.)

Aunque esta Comisión conoce la fragilidad de la naturaleza humana que, en no pocas ocasiones, es propensa a canalizar la ira y el coraje mediante lenguaje altisonante y soez o por medio de actos violentos o amenazantes, también entiende que como parte de sus obligaciones un Juez debe en todo momento moderar su temperamento y evitar todo tipo de conducta violenta. El querellado, al proferir palabras soeces y enseñar su revólver, ya sea desenfundándolo o manteniéndolo en la vaqueta, incurrió en conducta lesiva a la integridad, decoro y respeto que debe caracterizar el proceder de todo magistrado dentro y fuera del estrado.

Considerando las anteriores determinaciones de hechos y conclusiones de derecho, se formula la siguiente:

## *RECOMENDACIÓN*

Esta Comisión entiende que la gravedad de los hechos imputados en otras circunstancias hubiera podido dar base a la imposición de sanciones más severas que la que aquí se recomienda. Dado el caso, sin embargo, de que el querellado ha renunciado a su cargo y de que por su condición de salud posiblemente no podrá ejercer funciones judiciales en el futuro, se recomienda al Juez Presidente y al Tribunal que la sanción a ser impuesta se limite a una Censura. Así lo acordó la Comisión en pleno con la excepción de los Comisionados Lic. José Emilio Motta García, por haberse inhibido, y la Hon. Aida Molinary de la Cruz, por haber determinado causa.

## *ORDEN*

A tenor con la Regla 33(b) de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico, se ORDENA al Secretario notificar copia de esta resolución e informe dentro de los próximos diez (10) días al Juez querellado y al Procurador General, a los fines que establece el inciso (c) de dicha regla.

> Transcurrido el término para radicarse petición de enmienda, se considerará esta resolución como el informe de la Comisión, a los fines del inciso (e) de la Regla 33, anteriormente expresada, de no enmendarse el mismo.

De convertirse esta resolución en el informe de la Comisión, deberá el Secretario cumplir con el segundo párrafo del inciso (e) de la Regla 33 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico.

Lo acordó la Comisión.

(*Fdo.*) Daniel E. López Pritchard
*Presidente*

CERTIFICO:

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*